IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BOARD OF TRUSTEES OF THE EMPLOYERS-SHOPMEN'S LOCAL 516 PENSION TRUST**, through their designated fiduciaries Zanley Galton, III and Phil Casciato,<br><br>       Plaintiff,<br><br>       v.<br><br>**COLUMBIA WIRE & IRON WORKS, INC.**, an Oregon corporation; **COLUMBIA STEEL SERVICES, INC.**, an Oregon corporation; **COLUMBIA STEEL SERVICES, INC.** dba **COLUMBIA WIRE & IRON WORKS**, an Oregon corporation; **COLUMBIA STEEL SOLUTIONS, INC.**, an Oregon corporation; **ROBERT G. PARK**, an individual; **ANDREW V. PARK**, an individual; and **SHAWNA C. PARK**, an individual,<br><br>       Defendants. | Case No. 3:15-cv-1301-SI<br><br>**OPINION AND ORDER** |

Gene Mechanic and Whitney Stark, MECHANIC LAW FIRM, 6420 S.W. Macadam Avenue, Suite 208, Portland, OR 97239. Of Attorneys for Plaintiff.

Robert B. Miller and Candice R. Broock, KILMER, VOORHEES & LAURICK, P.C., 732 N.W. 19th Avenue, Portland, OR 97209. Of Attorneys for Defendants.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiff Board of Trustees of the Employers-Shopmen's Local 516 Pension Trust (the "Fund") brings claims under Oregon common law and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendants Columbia Wire & Iron Works, Inc. ("CWIW"); Columbia Steel Services, Inc. ("CSSI"); Columbia Steel Services, Inc. dba Columbia Wire & Iron Works ("CSSI dba CWIW"); Columbia Steel Solutions, Inc. ("Solutions"); and Robert and Andrew Park (collectively, the "Parks") (collectively, "Defendants").[1] The Fund alleges that CWIW incurred more than $2 million in withdrawal liability when it withdrew from the Fund and seeks to recover CWIW's withdrawal liability from CWIW, CWIW's former owners (the Parks), and from other corporations owned by the Parks. Before the Court is Defendants' motion to dismiss the First Amended Complaint. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations

---

[1] The parties have stipulated to dismissing without prejudice all claims previously alleged by the Fund against Shawna C. Park.

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND[2]

Until it ceased operations in 2012, CWIW was a corporation owned by the Parks and others.[3] CWIW had collective bargaining agreements (collectively, the "CBA") with the Ironworkers-Shopmen's Local 516, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. The CBA allegedly covered all of CWIW's production and maintenance employees engaged in the fabrication of iron, steel, metal, and other products. The CBA also required CWIW to contribute regularly to a pension fund (the Fund) on behalf of CWIW's employees. CWIW withdrew from the Fund in 2012 when it ceased all business

---

[2] The following factual recitation is taken from the allegations in the Fund's First Amended Complaint (ECF 28).

[3] Andrew Park's wife, Shawna C. Park, also allegedly owned a portion of CWIW.

PAGE 3 – OPINION AND ORDER

operations. As a result of its withdrawal, CWIW allegedly incurred more than $2 million in withdrawal liability to the Fund.

In this suit, the Fund seeks to recover the alleged withdrawal liability from Defendants, and primarily CWIW. Because CWIW, however, is no longer in business and may be unable to pay the withdrawal liability, the Fund also seeks to recover CWIW's withdrawal liability from the Parks and other corporations owned by the Parks, Defendants CSSI, CSSI dba CWIW, and Solutions. The Fund alleges that despite CWIW's cessation of business operations in 2012, the Parks have continued CWIW's steel fabrication business as a non-union operation through CSSI, CSSI dba CWIW, and Solutions. The Fund further alleges that Defendants fraudulently concealed from the Fund the fact that they were continuing their steel fabrication business in order to avoid payment of CWIW's withdrawal liability.

The Fund brings five claims under ERISA and the common law. First, the Fund claims that CWIW has failed to pay withdrawal liability. 29 U.S.C. §§ 1145, 1451(b). Second, the Fund claims that CSSI, CSSI dba CWIW, and Solutions are liable for CWIW's withdrawal liability because they are in the same controlled group as CWIW. 29 U.S.C. § 1401(f)(3)(B). In the third and fourth claims, the Fund claims that CSSI, CSSI dba CWIW, and Solutions are liable for the withdrawal liability under the common law alter ego and successor liability doctrines, respectively. Fifth, the Fund seeks to hold Robert and Andrew Park liable under the doctrine of "piercing the corporate veil."

# DISCUSSION

Defendants move to dismiss Claim Two against Solutions and Claims Three, Four, and Five against all Defendants.[4] The Fund has agreed voluntarily to dismiss Claim Two against Solutions. Accordingly, remaining before the Court is Defendants' motion to dismiss Claims Three through Five.

## A.  Claim Three: Alter Ego Liability

Defendants argue that Claim Three should be dismissed against CSSI and Solutions for three reasons. First, Defendants argue in their reply that the alter ego doctrine does not apply to suits attempting to collect withdrawal liability after the enactment of the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.* In 2010, the Ninth Circuit declined to decide "whether [29 U.S.C.] § 1392(c) is intended to be the sole route of redress for evading or avoiding withdrawal liability" or whether the alter ego doctrine is still available despite enactment of the MPPAA. *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 852 (9th Cir. 2010). The Ninth Circuit instructed the district court on remand to decide the issue. *Id.* In a thoroughly reasoned opinion, which this Court finds persuasive, the district court held that the alter ego doctrine was still available. *See Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 2012 WL 669765, at *4-5 (N.D. Cal. Feb. 29, 2012).

Although the Ninth Circuit does not appear to have expressly considered the issue, other circuits have applied the alter ego doctrine to suits to collect withdrawal liability after the enactment of the MPPAA. *See, e.g.*, *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649-50 (2d Cir. 2005); *Bd. of Trs. of Teamsters Local 863*

---

[4] Defendants move to dismiss Claim Four against CWIW, instead of CSSI. This appears to be a scrivener's error. The Court construes Defendants' motion to dismiss Claim Four as against CSSI, CSSI dba CWIW, and Solutions.

*Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171-73 (3d Cir. 2002); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1288-89 (7th Cir. 1996). Moreover, the Ninth Circuit has applied the alter ego doctrine in suits to collect delinquent contributions, which are "treated in the same manner" as actions to compel an employer to pay withdrawal liability. 29 U.S.C. § 1451(b); *Trs. of the Screen Actors Guild–Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776–77 (9th Cir. 2009); *cf. Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1093 (9th Cir. 2015) ("We see no reason why the successorship doctrine should not apply to MPPAA withdrawal liability just as it does to the obligation to make delinquent ERISA contributions.") Accordingly, the Court holds that the alter ego doctrine still applies to actions to compel employers to pay withdrawal liability after the enactment of the MPAA.

Second, Defendants argue that the Fund has not adequately alleged unity of interest or fraud or injustice under *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073-75 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016). The Fund correctly responds that the *Ranza* test does not apply to the alter ego claim in this case. When a union company is accused of creating a non-union alter ego for the purpose of avoiding collective bargaining obligations, a court must determine: (1) "whether the two firms are a single employer by measuring the degree of common ownership, management, operations, and labor relations"; and (2) whether the non-union firm is "being used 'in a sham effort to avoid collective bargaining obligations, rather than for the pursuit of legitimate business objectives.'" *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1470 (9th Cir. 1994) (citation omitted) (quoting *Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1336 (9th Cir. 1988)); *see also M&M Installation*, 630 F.3d at 854 ("[T]he

rationale of our alter ego cases shows that the *Nor–Cal* standard, adapted to the circumstances of withdrawal liability, remains applicable.").

Regarding the first *Nor-Cal* factor, the Fund points to allegations that Robert, Andrew, and Shawna Park collectively own all of the shares of CWIW, CSSI, and Solutions, ECF 28 ¶ 9-11; Robert Park is CWIW's and CSSI's Chief Executive Officer and Solutions' President and Secretary-Treasurer, ECF 28 ¶ 9; Andrew Park is CWIW's and CSSI's President, ECF 28 ¶ 10; CSSI is a successor to CWIW's steel fabrication business, ECF 28 ¶ 13, 21-25; and "Defendants continued to do business with the same customers and vendors, and to use employees formerly employed by [CWIW], ECF 28 ¶ 20. Taking these allegations as true, the Fund has adequately alleged common ownership, management, operations, and labor relations between CWIW, on the one hand, and CSSI and Solutions, on the other.

Regarding the second *Nor-Cal* factor, the Fund points to allegations that CSSI and Solutions fraudulently concealed that they were continuing their "steel fabrication" business and "are being used in a sham effort to evade and avoid their withdrawal liability obligations to" the Fund. ECF 28 ¶¶ 13, 18, 20-21, 23, 25, 35. Defendants reply that the Fund has not alleged that CSSI and Solutions continue to engage in work covered by the CBA. The Court notes the CBA allegedly covers "all production and maintenance employees . . . engaged in the fabrication of iron, steel, metal and other products," which the First Amended Complaint refers to as "steel fabrication." ECF 28 ¶ 12. Accordingly, the Fund has adequately alleged that CSSI and Solutions continue to engage in covered work. Defendants further reply that the CBA only covered shop fabrication, not steel design or construction, and that Defendants ceased shop fabrication work after CWIW withdrew from the Fund. Defendants argue that because the evidence does not support the Fund's allegations that Defendants continued CWIW's fabrication business, the Fund

PAGE 7 – OPINION AND ORDER

does not have a valid alter ego claim. The Court notes that Defendants have not filed a copy of the CBA and have not requested that it be incorporated by reference into the First Amended Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Construing the allegations in the First Amended Complaint in the light most favorable to the Fund, the Court finds that the Fund has adequately alleged its alter ego claim against CSSI and Solutions. This is not the time to consider whether the Fund can prove its allegations.

Third, Defendants argue, without citing any case law, that the Fund has failed to allege that CWIW and CSSI functioned concurrently. The Fund responds that alter ego liability does not require the union and non-union businesses to function concurrently, and even if it did, the Fund alleges that CSSI and CWIW were both still operating even after CWIW ceased operations in 2012. ECF 28 ¶¶ 20-22, 25. The Court agrees with the Fund that there is no requirement that the union and non-union shop function concurrently. The Ninth Circuit has noted that "the alter ego test[] [is typically invoked] when one company purports to *close shop* and transfer its business to a successor entity through a disguised discontinuance, a sham transaction, or a mere technical change in operations." *A. Dariano & Sons, Inc. v. Dist. Council of Painters No. 33*, 869 F.2d 514, 519 (9th Cir. 1989) (emphasis added). Accordingly, the Court denies Defendants' motion to dismiss the alter ego claim against CSSI and Solutions.

## B.  Claim Four: Successor Liability

Defendants argue that Claim Four should be dismissed against CSSI and Solutions for two reasons. First, Defendants argue that paragraph 37 of the First Amended Complaint does not contain sufficient allegations that CSSI and Solutions are substantial continuations of CWIW. The Fund responds by pointing to paragraphs 20 and 21.

"The primary question in successorship cases is whether, under the totality of the circumstances, there is 'substantial continuity' between the old and new enterprise." *Haw*.

PAGE 8 – OPINION AND ORDER

*Carpenters Tr. Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 294 (9th Cir. 1987). "To address whether the new business is the successor of an old business," courts consider the following non-exhaustive list of factors:

> [Whether] there has been a substantial continuity of the same business operations[;] [whether] the new employer uses the same plant; [whether] the same or substantially the same work force is employed; [whether] the same jobs exist under the same working conditions; [whether] the same supervisors are employed; [whether] the same machinery, equipment, and methods of production are used; and [whether] the same product is manufactured or the same service [is] offered.

*Resilient*, 801 F.3d at 1090-91 (alterations in original) (quoting *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463 (9th Cir. 1985)).

In paragraph 37 of the First Amended Complaint, the Fund alleges:

> Defendants CSSI, CSSI dba [CWIW], and Solutions continued CWIW's steel fabrication business using CWIW's good will and other assets, contracted with many of CWIW's former customers and vendors, and maintained common ownership and control, as well as common employees, including some who were previously covered by the CBA.

ECF 28 ¶ 37. Paragraph 20 also contains similar allegations regarding continuity between the steel fabrication business, customers, vendors, and employees. ECF 28 ¶ 20. Paragraph 21 contains the additional allegation that Defendants continued to use CWIW's name in their business activities. ECF 28 ¶ 21. Defendants reply that if the CBA were in evidence, it would prove that CSSI and Solutions are not engaged in any work covered by the CBA. As discussed previously, this is a motion to dismiss, and the CBA has not been submitted by any party. Accepting the Fund's allegations as true and construing them in the light most favorable to the Fund, the First Amended Complaint satisfies many of the *Resilient* factors, including continuity of business operations, workforce, and product. Accordingly, the Fund has sufficiently alleged that CSSI and Solutions are substantial continuations of CWIW.

PAGE 9 – OPINION AND ORDER

Second, Defendants argue that the Fund has failed to allege that CSSI and Solutions had notice of CWIW's withdrawal liability. The Fund responds that notice is not a requirement of a successor liability claim. The Court agrees with Defendants that notice is a requirement. *Michael's Floor Covering, Inc.*, 801 F.3d at 1095; *see also Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989) (explaining that fairness is a "prime consideration" in the application of successor liability). "Notice can be proven not only by pointing to facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances." *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990). Although the Fund does not expressly allege that CSSI and Solutions had notice of CWIW's withdrawal liability, the Fund alleges that the Parks, collectively the managers of CWIW, CSSI, and Solutions, planned to continue their steel fabrication business as a non-union shop to avoid paying withdrawal liability. ECF 28 ¶ 13, 21. Accepting these allegations as true, a factfinder could reasonably infer that CSSI and Solutions had notice of CWIW's withdrawal liability through their managers. Accordingly, the Court denies Defendants' motion to dismiss the successor liability claim.

## C. Claim Five: Piercing the Corporate Veil

In Claim Five, the Fund seeks to pierce both CWIW's and CSIS's corporate veils to recover the withdrawal liability owed by CWIW to the Fund from shareholders Robert and Andrew Park. Defendants argue that the Fund has not alleged facts sufficient to meet the Oregon common law standard for veil piercing because the Fund fails to allege that Robert and Andrew Park used their control over CWIW to engage in improper conduct that made it impossible for the Fund to collect withdrawal liability from CWIW. *See Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94, 108 (1982). The Fund correctly responds that Oregon common law does not supply the correct standard for veil piercing in this case. When considering whether to

PAGE 10 – OPINION AND ORDER

pierce the corporate veil and hold a corporation's shareholders liable for the corporation's withdrawal liability, courts consider three factors: "the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the fraudulent intent of the incorporators."[5] *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979); *see Bd. of Trs. of Mill Cabinet Pension Tr. Fund v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772-74 (9th Cir. 1989) (applying the *Seymour* factors to an action to collect withdrawal liability). A plaintiff "must prevail on the first threshold factor and on one of the other two." *Nor-Cal*, 48 F.3d at 1475. The Court considers each of these factors in turn.

### 1. Respect Given to the Separate Identity of the Corporation by Its Shareholders

Regarding the first prong, the Fund points to allegations that Defendants loaned or transferred funds between their business and personal accounts without documentation, Robert Park's spouse also loaned funds to CWIW and CSSI without documentation, and Defendants failed to hold director meetings. ECF 28 ¶ 25. The Court also notes that the Fund's allegation that Defendants failed to respect the separate identities of CWIW and CSSI by "commingling the operations of CWIW and CSSI without regard to their separate corporate identities."[6] ECF 28 ¶ 25. Defendants argue that the Fund should have alleged commingling of the assets, not the

---

[5] Despite the order in which the Ninth Circuit lists these factors in *Seymour*, courts commonly refer to respect for the corporate form as the first prong, fraud as the second prong, and injustice as the third prong.

[6] In reply, Defendants emphasize that evidence of commingling, without more, is insufficient to impose personal liability on a shareholder. Such evidence, however, is sufficient to satisfy the first prong. *See Valley Cabinet & Mfg. Co.*, 877 F.2d at 773 (noting that comingling is "among the more serious abuses of the corporate identity"); *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 764 (9th Cir. 1981) (upholding a district court's conclusion that a shareholder had paid little respect to corporate formalities, but finding that the district court had improperly pierced the corporate veil because it did not address the other two prongs).

"operations," of CWIW and CSSI. Construing these allegations in the light most favorable to the Fund, the Court finds them sufficient to satisfy the first prong.[7]

### 2. Fraudulent Intent

Defendants argue that the Fund has not pleaded its allegations of fraud with particularity under Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). The Fund replies that Rule 9(b) does not apply. This Court has already considered the issue of when a plaintiff must plead its allegations with particularity. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, --- F. Supp. 3d ---, 2016 WL 4107717, at *5-6 (D. Or. Aug. 1, 2016).

When "a plaintiff . . . choose[s] . . . to allege some fraudulent and some non-fraudulent conduct [in support of a claim] . . . only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). As the Ninth Circuit explained:

> In such cases, application of Rule 9(b)'s heightened pleading requirements only to "averments" of fraud supporting a claim rather than to the claim as a whole not only comports with the text of the rule; it also comports with the rule's purpose of protecting a defendant from reputational harm . . . . Fraud allegations may damage a defendant's reputation regardless of the cause of action

---

[7] Without citing any authority, Defendants argue that loans and transfers cannot subject Robert and Andrew Park to liability. Although not all loans and transfers subject shareholders to liability, the Court finds that when construed in the light most favorable to the Fund, Robert and Andrew Park's alleged loans and transfers support the first prong. *See Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524 (9th Cir. 1984) (finding evidence that "shareholders periodically made interest-free loans to the corporation for which no promissory notes or IOU's were given" supported the district court's holding that the first prong was satisfied).

PAGE 12 – OPINION AND ORDER

> in which they appear, and they are therefore properly subject to Rule 9(b) in every case. To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).

*Id.*

In support of its effort to pierce the corporate veils of CWIW and CSSI, the Fund has alleged a scheme to use CWIW's and CSSI's corporate forms to defraud the Fund of withdrawal liability. The Court holds that the Fund must plead these allegations of fraud with particularity.

Nevertheless, the Court finds that the Fund's allegations satisfy the requirements of Rule 9(b).[8] Rule 9(b) requires allegations of fraud to "identif[y] the role of the individual defendants in the alleged fraudulent scheme," *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989), and state the "'the who, what, when, where, and how'" of the misconduct charged, *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997). The Fund alleges that in 2011, Robert and Andrew Park began planning to continue their business as a non-union operation without paying withdrawal liability to the Fund. ECF 28 ¶ 13. At around the same time, CWIW allegedly began selling its machinery and then ceased its operations in 2012. ECF 28 ¶ 14, 15. At a meeting of the Fund's Trustees on December 13, 2012, Andrew Park allegedly "told the Trustees that he had no employees, bargaining or otherwise, for several months. He further said that due to the downturn in the economy and competition from non-union business, CWIW had zero assets . . . ." ECF 28 ¶ 18. These statements were allegedly false or misleading because "Andrew Park and other Defendants intentionally concealed from the Fund the fact that Defendants were continuing their steel fabrication business." ECF 28 ¶ 18.

---

[8] For similar reasons, and as described below, the Court finds that the allegations satisfy the fraudulent intent prong of the *Seymour* test.

PAGE 13 – OPINION AND ORDER

Andrew Park allegedly intended "to evade or avoid payment of withdrawal liability to the Fund" in making these statements. ECF 28 ¶ 18. In addition, the Fund alleges that on December 17, 2012, Andrew Park, while under oath, falsely stated in the Fund's Statement of Business Affairs that "a reorganization or mere change in identity, form, or place of organization" had not caused CWIW's cessation of contributions. ECF 28 ¶ 19. Finally, with regard to Robert Park, the Fund alleges that on September 25, 2013, he emailed Andrew Park regarding a project for BP Alaska and in "referring to a current employee who had previously worked under the CBA, [he] stat[ed] 'we want a tight lid on the fact we will be making these until we have a deal[.] We do not want the old hands or union to get wind.'" ECF 28 ¶ 23 (some alterations in original). These allegations specify the "who, what, when where, and how" of the alleged fraud committed by Robert and Andrew Park.[9]

Defendants further argue that even if the Fund has plead its allegations of fraud with particularity, the allegations are irrelevant to the fraudulent intent prong of the *Seymour* test because they refer only to conduct that occurred when CWIW was no longer in business. The fraudulent intent prong, however, may be satisfied both by evidence of fraudulent intent in forming the corporation and by "post-incorporation misuse of the corporate form to perpetrate a fraud against creditors." *Valley Cabinet & Mfg. Co.*, 877 F.2d at 773-74 (noting that "[g]arden variety fraud should be insufficient to pierce the corporate veil in the absence of evidence of shareholder abuse of the corporate form to defraud creditors"). Accepting the Fund's allegations as true and construing them in the light most favorable to the Fund, the First Amended Complaint describes an alleged scheme to incorporate or misuse the non-union CSSI

---

[9] The Court notes that paragraph 21 of the First Amended Complaint alleges that Defendants filed a false form with the City of Portland and continued to use CWIW in their business activities, but does not specify which Defendant took these actions. ECF 28 ¶ 21. The Fund may replead paragraph 21 when it files its Second Amended Complaint.

PAGE 14 – OPINION AND ORDER

fraudulently to avoid the collective bargaining obligations of CWIW and to defraud CWIW's union creditors.[10] Such a scheme, if proven, would satisfy the fraudulent intent prong. *See NLRB v. O'Neill*, 965 F.2d 1522, 1531 (9th Cir. 1992) (finding corporate veils justifiably pierced when the majority shareholder "was the driving force behind the creation of the different corporations, created the corporations with fraudulent intent and in an effort to avoid his labor obligations, and continued to participate actively in their operations").

### 3. Injustice

Regarding the third prong—the degree of injustice visited on the litigants by recognition of the corporate entity—Defendants argue that even if the Fund were unable to collect the withdrawal liability from CWIW and CSSI, the "inability to collect [upon a judgment] does not, by itself, constitute an inequitable result."[11] *Seymour*, 605 F.2d at 1113. The Court agrees that an inability to collect upon a judgment is not, by itself, an inequitable result, for example, "where

---

[10] Defendants argue that some facts or allegations may indicate the absence of fraudulent intent. For instance, Defendants assert that CWIW was in business for several years. *See Blankenship v. Omni Catering, Inc.*, 21 F.3d 1111 (9th Cir. 1994) (unpublished) (holding that "continuing to do business for a period of at least five years indicates a good faith use of the corporate form to conduct a legitimate enterprise"). Defendants also assert that allegations that CWIW's officers misrepresented that CWIW was out of money and going out of business are insufficient to establish fraudulent intent because "false statements about the relationship between [shareholders'] corporations do not, in themselves, constitute misuse of the corporate form to perpetrate a fraud." *Nor-Cal*, 48 F.3d at 1476. As discussed, the First Amended Complaint sufficiently alleges fraudulent intent. At the motion to dismiss stage, the Court construes these allegations in the light most favorable to the Fund.

[11] Defendants also assert that the Fund cannot prove injustice because it never alleges that it is unable to collect withdrawal liability from CWIW. Construing the Fund's allegation that Defendants "undercapitalize[ed] CWIW and/or CSSI" in the light most favorable to the Fund, however, the Court finds that the Fund has alleged that it is unable to collect CWIW's withdrawal liability from both CWIW and CSSI. ECF 28 ¶ 25. Accordingly, Defendants' argument that the Fund fails to allege that it has no other remedy to collect withdrawal liability from CWIW and CSSI is unpersuasive. *Cf. Valley Cabinet & Mfg. Co.*, 877 F.2d at 774 (finding the fact that the plaintiff may have other remedies to collect from an insolvent defendant corporation supported the district court's holding that the third prong was not satisfied).

PAGE 15 – OPINION AND ORDER

the corporation was once adequately capitalized but subsequently fell upon bad financial times." *Uriarte Clean-Up Serv., Inc.*, 736 F.2d at 525.

A plaintiff's inability to collect from an insolvent corporation can be an inequitable result, however, "when 'a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business.'" *Id.* (quoting Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law*, 95 Harv. L. Rev. 853, 855 (1982)). The Fund alleges that Defendants "undercapitalize[ed] CWIW and/or CSSI." ECF 28 ¶ 25. As discussed above, the Fund also alleges that CWIW was unable to pay withdrawal liability because Defendants were dismantling CWIW's business and continuing their steel fabrication business through the non-union CSSI, not because CWIW was suffering from an economic downturn. ECF 28 ¶ 13-15, 18, 20, 21. Construing the allegations in the light most favorable to the Fund, the Fund satisfies the injustice prong of *Seymour*.[12]

### D.  Claims Against CSSI dba CWIW

Defendants argue that all claims against CSSI dba CWIW should be dismissed because CSSI dba CWIW is only a fictitious business name used by CSSI. Thus, Defendants argue, CSSI dba CWIW is not a separate legal entity from CSSI. The Fund concedes that CSSI and CSSI dba CWIW are the same legal entity, but argues that naming CSSI dba CWIW as a defendant serves the purpose of demonstrating Defendants' allegedly fraudulent scheme to continue CWIW's steel fabrication business while avoiding withdrawal liability. Because CSSI and CSSI dba CWIW are duplicative, there shall be only one defendant named "Columbia Steel Services, Inc."

---

[12] Defendants also argue in their reply that actions taken by the Parks after CWIW ceased operations do not support the injustice prong because this prong ordinarily refers to actions undertaken by the corporation itself. Construing the allegations in the light most favorable to the Fund, the Parks allegedly undercapitalized CWIW while they were managing it.

## CONCLUSION

Defendants' Motions to Dismiss Plaintiff's First Amended Complaint (ECF 35) is GRANTED in part and DENIED in part. The Fund's Second Claim for Relief against Solutions is DISMISSED with leave to replead. All claims against Defendant Columbia Steel Services, Inc. dba Columbia Wire & Iron Works are DISMISSED.

**IT IS SO ORDERED**.

DATED this 8th day of February, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
